### Morris and others *vs.* Mowatt and others.

A creditor coming in under a decree, to prove a claim which is not set out in the pleadings or proofs in the cause, must present the particulars of his claim to the master; and he must also support the same by his affidavit, stating that the amount claimed is justly due, and that neither he nor any other person by his order or for his use has received the amount thus claimed or any part thereof, or any security or satisfaction for the same.

After a decree in the cause, settling the amount due to the complainants, the court refused to let them in to prove a new claim not set up in the pleadings, and which was also a stale claim of more than ten years standing.

Whether a creditor who has filed his bill to recover specific claims against the estate of a decedent, can go before the master, under the decree, as a general creditor for another and distinct demand not set up in his bill or referred to in the decree? Quære.

July 16.     JOHN MOWATT, junior, died in May, 1821. At the time of his death he was one of the assignees of C. Sands, a bankrupt, in conjunction with R. Morris, one of the complainants in this suit. The other complainants in this suit were afterwards appointed assignees, with R. Morris. A bill was subsequently filed in this court by the complainants, as such assignees,

against J. E. Mowatt, C. Mowatt, and James Mowatt, as the executors of the said J. Mowatt, jun., to recover the balance due from him, as such assignee, to the estate of the bankrupt; and such proceedings were had in that suit, that it was referred to a master to take an account of the balance due from the estate of J. Mowatt, jun. to the complainants. The master reported that there was due to the complainants $16,358, 79, including interest up to the 13th of October, 1827, the date of the report. A decree was thereupon entered for the payment of the amount reported due, with interest and costs, out of the estate of the testator, in the hands of the defendants in that suit; and a personal decree was also made therefor against J. E. Mowatt, one of the defendants. After the decree, the complainants received between eleven and twelve thousand dollars in part satisfaction thereof. The complainants afterwards filed their bill and supplemental bill in this suit, against Charles Mowatt, James Mowatt, and the legal representatives of J. E. Mowatt, who had died intestate after making the decree, as the devisees under the will of J. Mowatt, jun. to obtain satisfaction of the balance due on the decree out of the real estate which remained in their hands as such devisees. And R. Lenox, who had a mortgage on a portion of the estate, executed in the lifetime of J. Mowatt, jun., The Phœnix Fire Insurance Company, who were mortgagees of C. Mowatt's interest in the estate of his father, and certain judgment creditors of C. Mowatt and J. E. Mowatt, who had acquired liens on their real estate, were made parties defendants. It was afterwards referred to a master to ascertain and report the amount due to the complainants from the estate of J. Mowatt, jun. and the amount due to Lenox on his mortgage. The master reported a balance of $7582,22 due the complainants, and that the sum of $17,763,99, was due to Lenox on the mortgage to him. On the 6th of November, 1832, a decretal order was made, in this cause, confirming the report of the master, and directing the sale of certain real estate of which the testator died seized; and that out of the proceeds of the sale the master should pay to Lenox, or his solicitor, the amount due on his mortgage, and his costs, and to the solicitor of the complainant his costs, and should bring

the residue into court, and report his proceedings in the premises. It was further ordered, that the master should take an account of what might be due to the several creditors of the testator, including the balance so reported due to the complainants, and the balance if any which might remain due on the mortgage of Lenox, after the application of the proceeds of the mortgaged premises towards the payment thereof. It was also ordered, that all the creditors of the testator, except the complainants and Lenox whose claims were established by the report and that decretal order, should have leave to exhibit before the master such proof as they might be advised was necessary to establish their respective claims, and *that the master should give the usual notices for such credi*tors to come in and establish their claims. Further directions were also given for the taking of certain other accounts, for the purpose of enabling the court to ascertain and settle equitable claims as between the several defendants, except R. Lenox. The property was afterwards sold by the master, and the proceeds, after paying the amount due to Lenox and the costs, as directed by the decree, were brought into court. And the master was proceeding to take an account of the sums due to the several creditors of J. Mowatt, junior, pursuant to the directions of the decretal order; when the complainants supposing that they had discovered a mistake, in the report of the master in the original suit against the executors, and that certain items of charge against the testator had been overlooked by the counsel for the complainants and the master at the time of making such report, presented their petition to the chancellor, praying that the master in taking the account, in the present suit, of what was due to the several creditors of the testator, might examine into the merits of this new claim of the complainants, and report thereon.

The application was opposed by James Mowatt, one of the devisees, and by certain creditors of the estate of the testator who had come in under the decree, and also by the Phœnix Fire Insurance Company, as mortgagees of the interest of C. Mowatt. And various affidavits and documents were read in opposition to the claim.

*D. S. Jones,* for the complainants.

*D. Selden,* for himself and J. Mowatt.

*J. Rhoades,* for the Phœnix Ins. Co.

THE CHANCELLOR. I am inclined to think that the affidavit of Morris in support of this claim is wholly insufficient to authorize the master to take cognizance of it; even if the complainants had a right, as general creditors, to come in under the decree and establish such a claim. To enable a creditor to come in under a decree to prove a claim, which is not stated or not referred to in the pleadings or proofs in the cause, he should present the particulars of his claim to the master, accompanied by his affidavit in support thereof. In this affidavit the claimant must swear, either positively or according to his information and belief, that the amount claimed is justly due, as set forth in the particular of his claim; and that neither the claimant, nor any person by his order, or, to his knowledge or belief, for his use, hath received the amount thus claimed or any part thereof, or any security or satisfaction whatsoever for the same or any part thereof. (*Bennett's Office of Master,* 54, *and App.* 24. *Brown's Ch. Pr.* 825.) The object of this affidavit is not to prove the claim; which, if contested by any person having a right to contest the same, must be supported by legal proof. But it is to guard against fictitious claims, which the parties presenting the same do not themselves believe to be founded in justice; although they may be able to produce documentary or other evidence in support of their claims sufficient to show a prima facie case of indebtedness. As a farther guard against unjust claims of creditors coming in under a decree, the master, upon the application of any party interested in opposing such claims, may examine the claimants on oath as to their claims, or any payments or set offs which ought in equity to be allowed on account of the same. (*See* 105*th Rule.*) Morris, the only one of the complainants who has verified this petition, or the charge before the master, does not in terms swear that he believes the amount of this new

claim is justly due from the estate of J. Mowatt, jun.; or that the amount, as reported due by the master, was less than the balance actually due from that estate. On the contrary, I should infer from the manner in which the petition and the verification of this claim is drawn, that he did not think the whole amount claimed was justly due. I allude to the sum of $1098,-73, deposited in the bank of New-York, which was received by Morris. I presume, however, he intended to represent to the master that he believed the residue of the claim was justly due; although from the manner in which the papers are drawn he has not actually sworn that he believed any thing was due beyond the amount reported by the master in the first suit. If the case turned upon this question alone, I should permit the petitioners to renew their application, upon a proper verification of their claim.

I am not prepared to say, however, that a creditor who has filed a bill for a specific claim against an estate, and where the usual decree has been obtained for an account, and that all the creditors be permitted to come in, can go before the master and prove another and distinct demand, not set up in the bill or referred to in the decree. In this case the complainants seek to go much further. They have filed their bill for a specific amount, as the balance due them from the estate of J. Mowatt, jun. as one of the trustees of Sands; and they have obtained a decree establishing that demand in this suit. And they now ask permission to go before the master and prove a claim for an additional sum, on the ground that the balance due from the estate of Mowatt, as claimed in their bill and established by the decree in this cause, was not the true balance, but that the amount due is in fact much larger. As the decree in the present suit has settled the balance due from the testator to the complainants, on account of monies received by him as one of the assignees of Sands, it is impossible, consistently with the regular and ordinary practice of the court, to permit any alteration in the amount of that indebtedness, without a re-hearing of the cause, with a view to the modification of the decree. That, however, cannot be granted on this petition. But even if a re-hearing was granted, as the bill lays no foundation for this additional claim, it would be erroneous to allow

the decree to be so modified as to permit the complainants to go before the master on such a claim. The remedy in such a case must be by opening the whole proceedings in the suit, and allowing the complainants to amend their bill. But that cannot be done here, as the real estate, devised by the will, has been already sold and conveyed under the decree, and the costs have also been paid out of the fund received on such sale. Although the decree in the original, suit against the executors, may not be conclusive, as to the amount of the indebtedness, in a suit by the same complainants against the devisees, yet if the account taken in that suit is now to be opened or disregarded, for the purpose of correcting any errors in favor of the complainants, the defendants, in common justice, must have the same privilege of re-investigating that account, for the purpose of showing that a less sum was due. But I am satisfied that after the lapse of more than ten years, and when the only persons who could probably understand and protect the rights of the defendants are dead, it would be improper to permit these complainants to set up this new claim against the estate, under the supposition that it had been overlooked, both by their counsel and the master, when the account was taken in the former suit.

The petition must therefore be dismissed, with costs to the parties, who have attended to oppose this application. Directing those costs to be paid out of the fund, would, in effect, be a direction that they should be paid by the parties who have successfully resisted this new claim.