**Richmond.**

BALTIMORE STEAM PACKET CO. *v.* WILLIAMS & CO. & OTHERS,

AND

NEW YORK, &C., R. CO. *v.* WILLIAMS & CO. & OTHERS.

March 18, 1897.

1. INJUNCTIONS—*Acquiescence—Dissolution.*—Where an injunction has been granted against a defendant, substantially in accordance with his answer, and the order has been acquiesced in by him for several years, and the practice which it was intended to prevent has been abandoned, it is not error to refuse to dissolve it.

2. CHANCERY PRACTICE—*Order for account—When refused.*—An order for an account is not awarded to enable a complainant to make out his case, nor until it has been ascertained that the complainant has a right to demand it. A mere charge that the defendant has illegally collected a large sum of the complainant without stating how much in the aggregate, or the particulars of how the sum accrued, especially when denied by the defendant and unsupported by proof, does not entitle the complainant to a decree for an account.

Appeals from decrees of the Corporation Court of the city of Norfolk, pronounced June 27, 1892, and February 14, 1894, in two chancery suits in each of which the appellees were the complainants, and in one of which the Baltimore Steam Packet Company was the defendant, and in the other the New York, Philadelphia & Norfolk Railroad Company was the defendant.

*Reversed.*

The opinion states the case.

*White & Garnett, Watts & Hatton* and *Borland & Wilcox,* for the appellants.

*Harmanson, Heath & Heath,* for the appellees.

KEITH, P., delivered the opinion of the court.

The questions of law and fact in these two cases being identical, they will be considered together.

Williams & Co. and a number of others, describing themselves as merchants, doing business as such in the city of Norfolk, who sue on behalf of themselves and other merchants similarly situated, filed their bill in the Hustings Court of the said city, averring that they had been required by the defendant corporation, in each case, in addition to the amount required and paid for the transportation of freight, to pay a charge by way of wharfage, which the defendant enforces by refusing to deliver freight upon which the charges are made until the same are paid. They aver that it is the duty of a common carrier to furnish at its terminus in Norfolk facilities for the receipt and delivery of freight without extra compensation, and that in persisting in charging and collecting wharfage it was acting illegally. They also charge that the acts complained of constitute a discrimination against them and others similarly situated, and against the commercial and mercantile interests of the city and port of Norfolk. They charge that these wrongful and illegal collections have continued for a number of years, and that they amount in the aggregate to many thousands of dollars each year, which the defendant should be required to account for and return to them. The bill in each case concludes with a prayer for an injunction restraining the defendant from continuing to impose and collect a charge for wharfage in addition to the sum to which it is entitled for transportation and freight, and that it be required to render an account showing the amount of wharfage collected of the plaintiffs and those for whom they sue, during the time it has been charged and collected, and that a decree be made in their favor for the amounts so ascertained.

The defendant answered and denied that it has imposed a burden on the plaintiffs, or discriminated against them in favor of merchants of other places, or that it has ever made a charge or established a method of business not advantageous to and acquiesced in by the merchants of the said city, and it especially denies that it has ever charged or collected from the plaintiffs or other merchants any wharfage not voluntarily paid. It avers that it has not charged the plaintiffs, and does not propose to charge them, for wharfage on any freight received by it except where such wharfage is expressly contracted for, or where freight has been allowed to remain on defendant's wharf an unreasonable time after its arrival; and it denies specifically that it has ever collected any amount from the plaintiffs in the past for which it should be required to account.

The case was heard before the Corporation Court on the bill, demurrer, answer and affidavits, and thereupon the court granted an injunction "restraining and prohibiting the defendant, its servants, clerks, and employees from collecting of the said plaintiffs and other merchants of the city similarly situated, charges for wharfage upon the goods, wares, and merchandise sent and received by them over the transportation line of the defendant company, without prejudice to the defendant to charge for the storage or wharfage for goods after notice of their arrival, and demand for their removal, and the failure of the owner or consignee to remove the same within a reasonable time after such notice and demand."

From the 27th of June, 1892, until the 21st of February, 1895, no further steps appear to have been taken in the cause. On the latter day the defendant by its attorney moved the court to dissolve the injunction heretofore awarded in the cause, which motion the court overruled. The defendant then filed its plea of the statute of limitations of three years

On the 7th of March, a decree was entered referring the cause to a commissioner to "take and report an account of

what amount or amounts have been paid by the plaintiffs, or any of them, to the defendant company for the wharfage charge in the bill, when paid, and the facts and circumstances under which said payments were made." From this decree an appeal was allowed by one of the judges of this court.

So far as the order granting the injunction is concerned, it appears to be substantially in accordance with the answer of the defendant, has been acquiesced in by the defendant from the time it was entered, and the practice which it was intended to prevent has been abandoned. We shall not, therefore, further consider that feature of the case.

The prayer for an account should not have been granted. An order of reference is not awarded to enable a plaintiff to make out his case, nor until it has been ascertained that the plaintiff has a right to demand it.

The law is well stated in 2 Barton's Ch. Pr., at page 630: "The settled rule in respect to orders of reference is that before an application for one shall be granted it must appear, with reasonable certainty, that an order will be necessary, and it will not be made upon the suggestion that in some contingency one will be required; for it will not do to put the defendant to the trouble and expense of rendering an account until it is ascertained that the plaintiff has a right to demand it, nor will a reference be made for the purpose of furnishing evidence in support of the allegations of a bill;" and the cases there cited, and especially *Lee County* v. *Fulkerson*, 21 Gratt. 182; and *Sadler* v. *Whitehouse*, 83 Va. 46.

Though it were conceded that a court of equity has jurisdiction in such a case to grant the injunction, and that having taken jurisdiction to grant the injunction it may administer full relief to the plaintiffs, upon which subject we express no opinion, it would still remain for the plaintiffs to state in a proper manner their right to the additional relief prayed for. There is an averment that the plaintiffs have in the course of years paid large sums of money to the defend-

ant, how much in the aggregate, or in what proportions, or under what circumstances, do not appear. Such a statement of a cause of action, either at law or in equity, is too vague to be a basis for a judgment or decree; and besides it is wholly denied by the answer, and is unsupported by proof. Under such circumstances, in the light of the authorities above quoted, it was error to enter a decree for an account.

Without passing upon any other question the decree complaied of must, for the reasons stated, be reversed.

*Reversed.*