## Richmond.

HAMILTON v. STEPHENSON AND OTHERS.

106    77
106   252

November 22, 1906.

Absent, Buchanan, J.

1. TRUSTS AND TRUSTEES—*Sale By Trustee—Opportunity to Bid.*—The facts of this case do not sustain the charge that the trustee who made the sale sought to be set aside did not give bidders ample opportunity to bid. The bidding occupied over three hours' time, and prospective purchasers had every opportunity afforded that they could reasonably expect.

2. JUDICIAL SALES—*Stifling Competition—Case in Judgment.*—Contracts which tend to lessen competition and restrain bidding at judicial sales are, as a general rule, held to be illegal; but the burden is on the party alleging such a contract to prove it by clear and satisfactory evidence. In the case in judgment this burden is not sustained by the party alleging the contract. The mere statement by a bidder to a friend, pending the sale, that if he purchased the whole tract of land then offered, and which had been previously offered in parcels, he would sell him a part of it, is not sufficient for that purpose.

3. EQUITY—*Order for Account—When Refused.*—An order for an account will not be awarded merely to enable a party to make out his case, or to reopen the investigation of the amount of an indebtedness which has been previously settled by the parties with the aid of their counsel, and the integrity and correctness of which has not been impugned.

4. USURY—*Settlements—Compounding Interest.*—Where settlements are made between parties from time to time, and new items of debit are brought in, and interest calculated on past due amounts, and a new bond given for the whole, this does not constitute usury.

Appeal from a decree in chancery of the Circuit Court of Highland county. Decree for defendants. Complainant appeals.

*Affirmed.*

The opinion states the case.

*J. M. Perry* and *T. K. Hackman,* for the appellant.

*C. P. Jones & Son* and *Glasgow & White,* for the appellees.

WHITTLE, J., delivered the opinion of the Court.

The object of this suit is to set aside the sale of a tract of land in Highland county, made by John W. Stephenson, trustee, under a deed of trust from the appellant, John G. Hamilton, and others, to secure a debt to Lucius H. Stephenson; and, pending the litigation, to enjoin John A. Whitelaw, the purchaser, from prosecuting an action of unlawful detainer to recover possession of the land.

At the hearing the Circuit Court dissolved the injunction and dismissed the bill, and the plaintiff, Hamilton, appealed.

There are four assignments of error, which will be considered in the order in which they are presented in the petition for appeal.

First. It is alleged that the sale was hurried, and that persons who were present and desired to purchase the land, and made known their purpose to the trustee and auctioneer, were denied the privilege of bidding; and the trustee caused the land to be prematurely knocked down to the purchaser, Whitelaw.

This assignment is not sustained by the evidence. It appears that the sale was duly advertised, and ample opportunity afforded intending bidders to arrange in advance for purchasing the property, if so disposed. It further appears that the sale was unusually well attended—more than two hundred persons being present—and that it was commenced shortly before noon and continued for over three hours. The allegation of misconduct on the part of the trustee rests upon the evidence of a witness who, after having failed to secure the co-operation of one person in the purchase of the property, sought to have the

sale, which had already been in progress for more than three hours, suspended to enable him to endeavor to effect a similar arrangement with another party. Full time was afforded him · to bid for the land individually, or to arrange with others to do so, and in the closing moments of the sale the trustee was under no obligation to comply with his request for further indulgence. It was evident that the bidding was drawing to a close, and the trustee on two occasions took out his watch and instructed the auctioneer if no higher bid was made in five or ten minutes to knock the land down. This is a common method of stimulating bidders toward the end of a sale, and was a fair and reasonable exercise of discretion on the part of the trustee in this instance.

The second assignment of error involves the charge that the trustee, at the request of the appellant, consented to sell the land in four parcels, but, after offering three out of the four lots, neglected to offer the fourth, and sold the tract as a whole at a sacrifice.

This assignment is also unsustained. The sale was to be for cash, and in the morning before it commenced, the appellant being confined to his bed by illness, the parties repaired to his chamber and entered into an arrangement in writing to the effect that the trustee should first offer the farm in such parcels as he might be advised, and then as a whole; and adopt the sale that produced the highest price, requiring cash sufficient to pay costs and expenses of sale, and the balance in equal installments, at one, two, three and four years, with interest from date. The evidence is conflicting in regard to the terms of the alleged arrangement between the appellant and the Stephensons as to the manner in which the land was to be first offered in parcels, the contention of the appellant being that the trustee violated the understanding in not selling separately a lot of 208 acres. The witnesses for Hamilton are not agreed among themselves with respect to the terms of the agreement. While, on the other hand, the fact that the land was first offered as re-

quested by Hamilton is proved by his counsel, McClintic, and the two Stephensons.

The third assignment of error is, that Whitelaw, the purchaser, stifled the bidding at the sale, and thereby acquired the property at a sacrifice.

The principle of law involved in this assignment is well settled in this jurisdiction. The rule is thus stated in a recent case: "Contracts which tend to lessen competition and restrain bidding at judicial sales are, as a general rule, held to be illegal; but the burden is upon the party alleging such a contract to prove it by clear and satisfactory evidence." *Nitro-Phosphate Syndicate* v. *Johnson,* 100 Va. 774, 42 S. E. 995. See also *Barnes* v. *Morrison,* 97 Va. 372, 34 S. E. 93.

One of the charges under this assignment of error is that, prior to the sale, Whitelaw entered into a stipulation with McClintic to deter persons from bidding, and agreed, in the event of his becoming the purchaser, that he would sell McClintic part of the land to straighten his boundary line. This allegation is positively denied by Whitelaw, both in his answer to the bill and in his testimony, and the only circumstances tending to give color even to the imputation are that McClintic was one of his sureties on the purchase-money bonds, and that after the land was put up as a whole Whitelaw told him if he bought the land he would sell him part of it. There is nothing in the evidence to connect Whitelaw directly or indirectly with any disparagement of Hamilton's title, nor does it appear that the price of the property was to any extent injuriously affected by McClintic's alleged declarations in derogation of the title. Burns' testimony is the only evidence in the case which contributes in any way to sustain the pretension that Whitelaw attempted to stifle bidding. In that connection the witness says: "Mr. Whitelaw did say to me to not run it up on him too high, and if he concluded to dispose of this side he would give us the refusal. At that time I didn't have any idea of making a bid on the place as a whole, because I was not able to buy it."

Whitelaw denies making the statement, and says: "It never occurred to me that Mr. Burns would bid on the place as a whole. Mr. Burns, or his wife, asked me if I bought the whole place would I sell the west side. I told them possibly I would do so. But as to asking them not to bid against me, I made no such request." It is not shown that either McClintic or Burns were prospective bidders; and, after careful examination of the evidence, we are of opinion that it fails to establish the accusation that Whitelaw either stifled or attempted to suppress bidding.

We are further of opinion that, in addition to the just criterion of value furnished by the highest bid at a fair sale in open market after due notice, the weight of evidence shows that the price paid, $11,000, was the fair value of the property. *Todd* v. *Gallego Mills,* 84 Va. 586, 591, 5 S. E. 676; *Nitro-Phosphate Syndicate* v. *Johnson, supra.*

This brings us to the consideration of the fourth and last assignment of error—namely, the refusal of the trial court to order an account of indebtedness between the appellant and Lucius H. Stephenson, as prayed for in the original and the amended bill.

In this aspect of the case we may with propriety adopt the language, as we must adopt the conclusion, of the learned judge of the Circuit Court in his carefully considered opinion:

"A great mass of testimony was taken in this case, and all the transactions between L. H. Stephenson and the plaintiff, running through a period of nearly a quarter of a century, were fully investigated. It would serve no useful purpose to take up and discuss the evidence, and each of the numerous items, here in detail. After the most exhaustive argument by able counsel and laborious scrutiny on my part of all the testimony, and conceding that L. H. Stephenson ought to be held to the strictest requirements of the law regarding transactions between counsel and client (and some of the transactions under investigation occurred when the relation did not exist), I am of opinion that he has fully met those requirements, and this record

clearly shows that his dealings with the plaintiff have been open and fair, and that he has not used his position of counsel, while that relation existed, to oppress or take advantage of the plaintiff. In every instance of settlements made between these parties the fullest and most particular accounts were made up, and the vouchers turned over to the plaintiff; he had these in his possession for years, and not until his creditor had his land sold did he ever enter a single protest.

"Indeed, it appears that on the day of sale the exact amount of the indebtedness between the parties was computed, in the presence of Hamilton and with the assistance of his counsel, and there was not a suggestion impugning either the integrity or correctness of the debt.

"It is a familiar rule of practice that an order for account will not be awarded to enable the plaintiff to make out his case, but the party asking for an account must show that he is entitled to it. *Baltimore Steam Packet Co.* v. *Williams,* 94 Va. 422, 26 S. E. 841; *Millhiser* v. *McKinley,* 98 Va. 207, 35 S. E. 466; *Bresee* v. *Bradfield,* 99 Va. 331, 38 S. E. 196.

"It is also alleged that the debt is usurious, but the charge is denied and was not proved. It does appear that from time to time Stephenson and Hamilton had settlements, bringing in new items of debit, calculating interest on past due amounts, and taking a new bond secured by deed of trust for the whole; but this does not constitute usury. *Brown* v. *Brent,* 1 Hen. & Munf. 4; *Childress* v. *Dean,* 4 Rand. 406; *Pindall* v. *Bank of Marietta,* 10 Leigh 481; *Fultz* v. *Davis,* 26 Gratt. 903; *Gilbert* v. *W. C. V. M. & G. S. R. R. Co.,* 33 Gratt. 586, 599.

"In conclusion it may be observed that while the pleadings are replete with allegations of a grave nature, criticising with more or less severity the conduct of the creditor, trustee and purchaser, the charges are categorically denied by the answers, and are not sustained by evidence."

Upon the whole case we are of opinion that the decree appealed from is without error, and should be affirmed.

*Affirmed.*